UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

FEDERAL INSURANCE COMPANY,

Plaintiff,

-against-

M/V "VILLE D'AQUARIUS", her engines,
tackle, boilers, etc. in rem, TRANSCON
SHIPPING CO. INC., CHINA SHIPPING
CONTAINER LINES (HONG KONG) CO.
LTD.,

Defendants.

-----------------------------------------------------------x

08 Civ. 8997 (PKC)

MEMORANDUM
AND ORDER

P. KEVIN CASTEL, District Judge:

Plaintiff Federal Insurance Company brings this maritime action as subrogated insurer of non-party Valterra Products Inc. ("Valterra") for damage to two shipments of swimming pool accessories that were transported from Ningbo, China, to Los Angeles, California, aboard the M/V Ville D'Aquarius (the "Vessel"). Defendant Transcon Shipping Co., Inc. ("Transcon"), an intermediary, filed a crossclaim against defendant China Shipping Container Lines (Hong Kong) Co. Ltd. ("CSCL"), the Vessel's charterer. CSCL has moved to dismiss plaintiff's complaint and Transcon's crossclaim based on the forum selection clause contained in two bills of lading CSCL issued for the transport of the goods. Transcon filed a "cross motion" also seeking dismissal of plaintiff's claims based on the forum selection clause contained in the CSCL bills of lading (the "Cross Motion"). For the reasons discussed below, CSCL's motion to dismiss the complaint and crossclaim, recharacterized as a motion for judgment on the pleadings, is granted on condition that CSCL waives any time-bar defense in a subsequent action filed by plaintiff in Hong Kong. Transcon's Cross Motion is denied.

## BACKGROUND

On or about February 5, 2008, Transcon, a non-vessel operating common carrier (an "NVOCC") was hired by Valterra to ship two containers of swimming pool products (the "Containers") from Ningbo, China, to Los Angeles, California. (Compl. ¶¶ 6-7.) "NVOCCs operate as middlemen; they arrange for relatively small shipments to be picked up from shippers, consolidate the smaller parcels, and ship them via a carrier or several carriers. They do not, however, own or charter the ships that actually carry the cargo." Ins. Co. of N. America v. S/S American Argosy, 732 F.2d 299, 301 (2d Cir. 1984). Transcon issued two bills of lading for the Containers (the "Transcon Bills"). (Exhibit 4 to the Declaration of David Mazaroli (the "Mazaroli Decl.").) The Transcon Bills are numbered NGB84254LAX and NGB84275LAX, and both are dated February 5, 2008. (Id.)

The Transcon Bills list Valterra as the consignee and Transcon as the destination delivery agent. (Id.) The same set of terms appears on the reverse of both of the Transcon Bills. Clause 6(d) of these terms states: "The Merchant agrees that the Carrier shall be deemed to be a beneficiary of the actual ocean carrier's bill of lading and of all exemptions, limitations of and exonerations from liability therein contained . . . ." (Exhibit B to the Declaration of Terry Lynch (the "Lynch Decl.").) Pursuant to 46 U.S.C. § 40501, Transcon "keep[s] open to public inspection in an automated tariff system," a tariff which includes bill of lading terms (the "Transcon Tariff"). Clause 2 on the reverse of the Transcon Bills incorporates the terms of the Transcon Tariff into the bills. (Lynch Decl. Exh. B, stating "The Goods carried hereunder are subject to all the terms and conditions of the Carrier's applicable tariff(s) . . . and said terms and conditions are incorporated herein as part of the Terms and Conditions of this Bill of Lading.")

The Transcon Tariff includes a jurisdiction clause which states: "Any dispute arising under this Bill of Lading shall be decided in the country where the Carrier has his principal place of business, and the law of such country shall apply except as provided elsewhere herein." (Mazaroli Decl. Exh. 1 ¶ 21.)  The tariff defines "Carrier" as "the party of whose behalf this Bill of Lading has been signed," i.e. Transcon.  (Id. ¶ 1.)  Transcon admits that it maintains a place of business in the United States, (Transcon Answer and Crossclaim ¶ 3), and it does not argue that its principal place of business is located outside of the United States.  Therefore, for the purposes of deciding Transcon's Cross Motion, I assume that Transcon maintains its principal place of business in the United States.

On February 5, 2008, the same day Valterra hired Transcon, Transcon hired CSCL to ship the two Containers aboard the Vessel.  CSCL, which chartered the Vessel, issued two bills of lading to Transcon, numbered NBLAX3CA374 and NBLAX3CA375, and both are dated February 5, 2008 (the "CSCL Bills").  (Compl. ¶ 6.)  As with the Transcon Bills, the reverse of the CSCL Bills contains a set of terms.  Paragraph 26(1) of these terms states:

> This Bill of Lading is governed by English laws.  All disputes arising under or in connection with this Bill of Lading shall be determined by the English laws and any action against the Carrier shall be brought before the Court of Admiralty in Hong Kong, as the case may be.

(Exhibit C to the Declaration of Wei Zhang (the "Zhang Decl.") ¶ 26(1).)  Carrier is defined as CSCL.  (Id. ¶ 1.)

On the way from China to Los Angeles, Valterra's goods were damaged.  (Compl. ¶¶ 7-8.)  Plaintiff, Valterra's subrogated insurer, filed its complaint on October 20, 2008.  CSCL filed its answer on November 13, 2008, asserting as an affirmative defense: "The Complaint should be dismissed pursuant to a foreign forum selection clause agreed to in the bill of lading contract of carriage, which requires all disputes to be determined by English law and any

litigation to be brought in Hong Kong." (CSCL Answer ¶ 18.)  Transcon filed its answer and

crossclaim against CSCL on November 25, 2008.  Transcon asserted the following affirmative

defenses: (1) "The shipment in question was to be carried from a foreign port to a U.S. port

pursuant to bill of lading contracts and Transcon's Tariff and was therefore subject to United

States Carriage Of [sic] Goods by Sea Act 46 U.S.C. (App.) 1300 et. [sic] seq."; and (2) "That

the venue of this matter is improperly placed in this District."  (Transcon Answer and Crossclaim

¶¶ 11, 18.)

On January 8, 2009, I referred this action to Magistrate Judge Katz for settlement.

On February 17, 2009, plaintiff's counsel sent Judge Katz a letter, requesting that he adjourn a

scheduled settlement conference because "[a]n agreement to recommend settlement ha[d] been

reached."  (Letter from David Mazaroli to Hon. Theodore Katz (Feb. 17, 2009) (the "February

17, 2009 Letter").)  The letter also states that "[t]he settlement contemplates dismissal of cross-

claims as well as the protective action the co-defendant filed in China."  (Id.)  According to

plaintiff, at some point shortly "after the one-year anniversary of the estimated date the cargo

should have been delivered, which date constituted the time-bar deadline as to any protective

action which could have been filed in Hong Kong," CSCL's counsel informed plaintiff's counsel

that CSCL did not accept the settlement proposal.  (Plaintiff's Opposition to CSCL's Motion to

Dismiss at 2.)  CSCL filed its motion to dismiss shortly thereafter, on March 30, 2009.

DISCUSSION

I. Legal Standard

A. Rule 12(c) Motions for Judgment on the Pleadings

CSCL asserts that it has made its motion to dismiss under Rules 12(b)(3), 12(b)(6)

and 12(c), Fed. R. Civ. P.  Transcon acknowledges that its Cross Motion is not made under any

rule or statute and states that it is relying on the Court's inherent power to enforce a valid contractual forum clause. This lack of clarity as to the exact procedural rule under which the Court should consider the motions is unsurprising because there is no Federal Rule of Civil Procedure tailored to address the enforcement of a forum selection clause. New Moon Shipping Co. v. MAN B & W Diesel AG, 121 F.3d 24, 29 (2d Cir. 1997) (noting that "there is no existing mechanism with which forum selection enforcement is a perfect fit.") (citation omitted). Neither the Supreme Court nor the Second Circuit has "designated a single clause of Rule 12(b) as the 'proper procedural mechanism to request dismissal of a suit based upon a valid forum selection clause' . . . ." Asoma Corp. v. SK Shipping Co. Ltd., 467 F.3d 817, 822 (2d Cir. 2006) (quoting New Moon, 121 F.3d at 28). Because these motions were brought after the defendants answered plaintiff's complaint, the motions cannot be made pursuant to Rules 12(b)(3) or 12(b)(6). Fed R. Civ. P. 12(b) ("A motion asserting any of these defenses must be made before pleading if a responsive pleading is allowed."). Therefore, I will treat the motions as Rule 12(c) motions for judgment on the pleadings.

   "Judgment on the pleadings is appropriate where material facts are undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings." Sellers v. M.C. Floor Crafters Inc., 842 F.2d 639, 642 (2d Cir. 1988). "In deciding a motion for judgment on the pleadings, a court may consider the pleadings and exhibits attached thereto, statements or documents incorporated by reference in the pleadings, [and] matters subject to judicial notice . . .." Prentice v. Apfel, 11 F. Supp. 2d 420, 424 (S.D.N.Y. 1998) (citing Brass v. American Film Techs., Inc., 987 F.2d 142, 150 (2d Cir. 1993)).

B.  Forum Selection Clauses

        The Second Circuit has endorsed a four-part analysis to determine whether to

dismiss a claim based upon the existence of a valid forum selection clause.  Phillips v. Audio

Active Ltd., 494 F.3d 378, 383-84 (2d Cir. 2007).  The court first considers whether "the clause

was reasonably communicated to the party resisting enforcement."  Id. at 383 (citation omitted).

Second, the court considers whether the clause is mandatory.  Id. (citation omitted).  Third, it

considers whether the claims and parties are subject to the clause.  Id.  (citation omitted).  If the

clause satisfies all three of these criteria, it is presumptively enforceable.  Id.  In the fourth and

final step, the court determines "whether the resisting party has rebutted the presumption of

enforceability by making a sufficiently strong showing that 'enforcement would be unreasonable

or unjust, or that the clause was invalid for such reasons as fraud or overreaching.'"  Id. at 383-

84 (quoting M/S BREMEN v. Zapata Off-Shore Co., 407 U.S. 1, 15 (1972)).

        The plaintiff bears the burden of overcoming the presumption of the clause's

enforceability.  M/S BREMEN, 407 U.S. at 15.  But, in deciding a motion to dismiss based on a

forum selection clause, the plaintiff is entitled to "have the facts viewed in the light most

favorable to it."  New Moon, 121 F.3d at 29.

II.  CSCL' Motion for Judgment on the Pleadings

        Valterra hired Transcon and Transcon hired CSCL.  Plaintiff argues, and CSCL

does not dispute, that the CSCL Bills never were disclosed to Valterra.  (Plaintiff's

Memorandum of Law in Opposition to the Motion of CSCL to Dismiss the Complaint at 5;

CSCL's Reply Memorandum of Law in Support of Motion to Dismiss).  At first glance, this

might suggest that the CSCL Bills' forum selection clause does not satisfy the first Phillips

prong.  However, courts in this and other Circuits generally hold that a party suing on a bill of

lading has consented to the terms of that bill of lading, including its forum selection clause. Kukje Hwajae Ins. Co. Ltd. v. M/V HYUNDAI LIBERTY, 408 F.3d 1250, 1254 (9th Cir. 2005) ("We have held that a cargo owner 'accepts' a bill of lading to which it is not a signatory by bringing suit on it."); Mitsui & Co. (USA) Inc., v. MIRA M/V, 111 F.3d 33, 36 (5th Cir. 1997) ("the district court did not err in determining that, by filing a lawsuit for damages under the bill of lading, [the shipper] has accepted the terms of the bill of lading, including the unnegotiated forum selection clause"); Farrell Lines Inc. v. Columbus Cello-Poly Corp., 32 F. Supp. 2d 118, 125 (S.D.N.Y. 1997) ("defendants have filed suit on the Bill of Lading, and thereby accepted its terms") aff'd sub nom Farrell Lines Inc. v. Ceres Terminals Inc., 161 F.3d 115 (2d Cir. 1998); A.P. Moller-Maersk A/S v. Ocean Express Miami, 550 F. Supp. 2d 454, 464 (S.D.N.Y. 2008) (collecting these and other cases).

            In paragraph one of its complaint, plaintiff states that it "seeks recovery for cargo loss caused by defendants' breaches of contract and torts." (Compl. ¶ 1.) In paragraph six of the complaint, plaintiff alleges that "[t]his action involves nondelivery to shipments . . . as described more fully in Transcon Shipping Co., Inc. bills of lading . . . and China Shipping Container Lines bills of lading NBLAX3CA374 and 375 both dated on or about February 5, 2008, and others." (Id. ¶ 6.) These paragraphs demonstrate that plaintiff is suing on the CSCL Bills. By doing so, plaintiff has accepted the forum selection clause contained therein. Therefore, the CSCL Bills' forum selection clause fulfills the first prong of the Phillips analysis. This also satisfies the third prong of the Phillips analysis – that plaintiff's claims are subject to the CSCL Bills' forum selection clause – because plaintiff's claims arise "under or in connection with" the CSCL Bills.[1] (Zhang Decl. Exh. C ¶ 26(1).)

---

[1] I may consider the CSCL Bills and the terms contained on their reverse because the bills are referred to, incorporated in, and integral to, plaintiff's complaint. Prentice, 11 F. Supp. 2d at 424.

Turning to the second <u>Phillips</u> prong, I must determine whether the forum selection clause is mandatory. That clause states:

> This Bill of Lading is governed by English laws. All disputes arising under or in connection with this Bill of Lading shall be determined by the English laws and any action against the Carrier shall be brought before the Court of Admiralty in Hong Kong, as the case may be.

(<u>Id.</u>) This clause is mandatory and exclusive because its language, in context, requires that all actions against CSCL must be brought in the Hong Kong court. The Second Circuit and courts in this district have held that forum selection clauses with similar language are mandatory and exclusive. <u>Phillips</u>, 494 F.3d at 386 (concluding that a forum selection clause providing that "any legal proceedings that may arise out of [the agreement] are to be brought in England" was mandatory) (alteration in original); <u>Macsteel Intern. USA Corp. v. M/V SPAR TWO</u>, No. 00 Civ. 9663(JSR), 2002 WL 472018, at *1 (S.D.N.Y. Mar. 28, 2002) ("Here . . . the language in issue directs, not merely that the courts of Korea shall have jurisdiction, but that 'any and all action . . . shall be brought before the Seoul Civil District Court in Korea,' thus mandating the precise venue where every action must be brought."); <u>LPR, SRL v. Challenger Overseas, LLC</u>, No. 99 CIV. 8883(JGK), 2000 WL 973748, at *2 (S.D.N.Y. July 13, 2000) ("The clause in this case requires that 'any action' against the carrier 'shall be brought' in a maritime court in the People's Republic of China. To hear such a dispute in any other court would be inconsistent with the explicit forum selection clause.").

Plaintiff argues that the use of the word "shall" does not make the forum selection clause mandatory, and in support, plaintiff cites <u>Hartford Fire Insurance Company v. Novocargo USA Incorporated</u>, 156 F. Supp. 2d 372 (S.D.N.Y. 2001). Plaintiff is correct that the use of the word "shall," in a vacuum, does not automatically make a forum selection clause mandatory. Context is important. The clause at issue in <u>Novocargo</u>, stated: "Any dispute arising under and

in connection with this Bill of Lading shall be governed by German Law and determined by the courts of Bremen." Id. at 373-74. The Novocargo court held that "the use of the word 'shall' only confers jurisdiction in the courts of Bremen, Germany without excluding jurisdiction elsewhere or employing mandatory venue language." Id. at 375. As opposed to the "determined by" language which addressed venue in Novocargo, the CSCL Bills' forum selection clause requires that "any action against the Carrier shall be brought before the Court of Admiralty in Hong Kong." (Zhang Decl. Exh. C (emphasis added).) This language is sufficient to confer exclusive and mandatory venue in the Hong Kong court. Indemnity Ins. Co. of N. America v. K-Line America, Inc., No. 06 Civ. 0615(BSJ), 2008 WL 4922327, at *7-8 (S.D.N.Y. Feb. 27, 2008) (distinguishing Novocargo and holding that language stating that "any action . . . shall be brought" in a specific court, conferred exclusive venue on that court).

Thus, the CSCL Bill's forum selection clause satisfies the first three prongs of Phillips and is entitled to the presumption of enforceability. The burden shifts to plaintiff to make a "sufficiently strong showing that 'enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching.'" Phillips, 494 F.3d at 383-84 (quoting BREMEN, 407 U.S. at 15).

Plaintiff's argument is that the Court should not enforce the CSCL forum selection clause because CSCL waived this defense, or in the alternative, CSCL should be estopped from asserting it. Plaintiff's estoppel argument is based on the fact that, at a point in time when plaintiff could have timely filed an action against CSCL in Hong Kong, CSCL's counsel agreed to recommend a settlement of the instant action to CSCL. All terms were agreeable to counsel for the parties but required approval by CSCL's counsel's client. But,

shortly after any Hong Kong action became time-barred, CSCL's counsel informed plaintiff's counsel that CSCL would not agree to the settlement.

Plaintiff's allegations – which are not contained in the pleadings – are insufficient to establish that CSCL should be estopped from asserting its improper venue defense.  Estoppel requires that "the party claiming the estoppel must have relied on its adversary's conduct 'in such a manner as to change his position for the worse,' and that reliance must have been reasonable in that the party claiming the estoppel did not know nor should it have known that its adversary's conduct was misleading.'"  Heckler v. Cmty. Health Servs. of Crawford County, Inc., 467 U.S. 51, 59 (1984) (citing Wilber Nat'l Bank v. United States, 294 U.S. 120, 124-125 (1935)).  Plaintiff alleges that the parties engaged in settlement negotiations, that CSCL's counsel represented that he would recommend the settlement to his client and that after he did so, CSCL did not accept the recommendation.  Plaintiff's estoppel claim fails because plaintiff does not allege that CSCL or its counsel misled plaintiff.  Fifth Ave. Uniform Co. v. Comm'r, 70 F.2d 677, 679 (2d Cir. 1934) ("estoppel is available only against one who has misled another").  Therefore, based on these allegations, CSCL should not be estopped from asserting its venue defense.

In addition, the two cases cited by plaintiff in support of its estoppel argument are inapposite.  In both of those cases the defendants were estopped from asserting a statute of limitations defense because they had made representations to the plaintiffs that reasonably could have induced plaintiffs not to commence suit before the limitations period expired.  Linmark Indus., Inc. v. M/V RUHR EXPRESS, No. 89 Civ. 6976 (SWK), 1990 WL 102234, at *1 (S.D.N.Y. July 6, 1990) (denying defendant's motion to dismiss because plaintiff "could reasonably have been induced" by defendant's representations prior to commencement of the

suit, so as "not to institute suit in the requisite time period"); <u>Austin, Nichols & Co., Inc. v. The</u>
<u>Cunard Steamship Ltd.</u>, 367 F. Supp. 947, 949 (S.D.N.Y. 1973) (denying defendants' motion for
summary judgment because plaintiff submitted affidavits alleging that "it received assurances
from defendants' agents that the claims would be paid, that such assurances continued through
and beyond the expiration of the time for bringing suit, . . . and that plaintiff did not bring suit
within one year because of its reliance on these assurances"). Unlike the defendants in those
cases, CSCL has asserted a defense of improper venue, not expiration of the limitations period.

Plaintiff's waiver argument also fails. Consistent with Rule 8(c), CSCL raised the
forum selection clause at its earliest opportunity. CSCL has not taken any action inconsistent
with that objection. Plaintiff has not provided any authority showing that defendant waived its
objection to venue merely by entering into settlement discussions with the plaintiff. Nor has the
Court found any.

Based on the foregoing, I will grant CSCL's motion for judgment on the
pleadings in its favor with regard to plaintiff's claims. Transcon, which is a party to the CSCL
Bills, does not challenge the applicability of the forum selection clause contained therein. In
fact, the clause's enforceability is the basis for Transcon's Cross Motion. Therefore, I also will
grant CSCL's motion for judgment on the pleadings in its favor with regard to Transcon's
crossclaims.

Plaintiff's final argument, with respect to CSCL, is that if I grant CSCL's motion,
I should do so on the condition that CSCL waives any defense of the statute of limitations (or
equivalent defense) in any subsequently filed action against CSCL in Hong Kong. CSCL

counters that several courts in this district have declined to grant similar requests. None of the cases cited by CSCL in support of its argument involved circumstances as extreme as these.[2]

Magistrate Judge Katz scheduled a settlement conference for February 18, 2009. The day before the conference, counsel for the plaintiff wrote to Judge Katz to advise that "[a]n agreement to recommend settlement has been reached" which was subject to "client approval." (February 17, 2009 Letter.) At the time that counsel for CSCL acquiesced in the representation by plaintiff's counsel, an action brought in the courts of Hong Kong would have been timely. Only after the action in Hong Kong was time-barred did CSCL advise that the settlement was unacceptable. This Court held a case management conference on March 20, 2009, at which point the settlement had been rejected, the time to bring the action in Hong Kong had run and a schedule for bring this action to conclusion was to be set.

Rule 1, Fed. R. Civ. P., commands that the rules of practice in federal court be "construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding." Facilitation of settlement is part of the work of the district court. See, e.g., Rule 16(c)(2)(I). It is worth noting that this is an action to recover damage to cargo in the amount of $51,153. (Compl. ¶ 9.) It would be unfortunate if the lesson to be learned from this episode is that the only prudent course for a party to take is to ignore opposing counsel's recommendation of the terms of a settlement and forge ahead with additional lawsuits in other fora. Conditioning dismissal upon waiver of a statute of limitations or equivalent ensures that the case will be heard on the merits and plaintiff will not be penalized for having entertained

---

[2] In New Moon, the Second Circuit expressed a concern that in cases like those cited by CSCL, "consideration of a statute of limitations would create a large loophole for the party seeking to avoid enforcement of the forum selection clause. That party could simply postpone its cause of action until the statute of limitations has run in the chosen forum and then file its action in a more convenient forum." 121 F.3d at 33. Here, however, plaintiff's claims against CSCL are subject to the one-year limitations period imposed by section 3(6) of the Carriage of Goods by Sea Act, regardless of the forum in which they are brought. 46 U.S.C. § 30701 note ("In any event the carrier and the ship shall be discharged from all liability in respect of loss or damage unless suit is brought within one year after delivery of the goods or the date when the goods should have been delivered.").

settlement. Cf. Aguinda v. Texaco, Inc., 303 F.3d 470, 478-79 (2d Cir. 2002) (affirming district court's forum non conveniens dismissal conditioned on defendant waiving its statute of limitations defense for any foreign actions filed within 60 days of dismissal, and directing the district court to enlarge the waiver period); Fed. Ins. Co. v. M/V BONN EXPRESS, No. 01 Civ. 8909 (LAK), 2002 WL 1203831, at *1 (S.D.N.Y. June 3, 2002).

III.   Transcon's Cross Motion

Transcon, which directly contracted with plaintiff through the Transcon Bills, has filed a "cross motion" attempting to take advantage of the CSCL Bills' forum selection clause. Transcon argues that clause 6(d) of the Transcon Bills makes the CSCL Bills' forum selection clause applicable to any action between Transcon and Valterra (and, therefore, applicable to plaintiff as Valterra's subrogated insurer). As with the CSCL Bills, the Transcon Bills are referred to, incorporated in, and integral to, plaintiff's complaint.

The Transcon Bills do not contain a forum selection clause. (Lynch Decl. Exh. B.) Clause 6(d) of the Transcon Bills states: "The Merchant agrees that the Carrier shall be deemed to be a beneficiary of the actual ocean carrier's bill of lading and of all exemptions, limitations of and exonerations from liability therein contained." (Id.) "Carrier" includes Transcon and "Merchant" refers to Valterra. (Id.)

Clause 2 of the Transcon Bills incorporates the terms of the Transcon Tariff into the Transcon Bills. (Id., stating "The Goods carried hereunder are subject to all the terms and conditions of the Carrier's applicable tariff(s) . . . and said terms and conditions are hereby incorporated herein as part of the Terms and Conditions of this Bill of Lading.") The Transcon Tariff – which Transcon references in its answer – contains a forum selection clause stating: "Any dispute arising under this Bill of Lading shall be decided in the country where the Carrier

has his principal place of business, and the law of such country shall apply except a provided elsewhere herein." (Mazaroli Decl. Exh. 1 ¶ 21.) For the purposes of this motion, Transcon has its principal place of business in the United States.

Thus, the interaction of clauses 2 and 6(d) of the Transcon Bills creates an ambiguity. This ambiguity must be construed against Transcon because it is the NVOCC and the drafter of the bills of lading and the tariff. Mitsui & Co. v. American Export Lines, Inc., 636 F.2d 807, 822-23 (2d Cir. 1981) (stating in dicta that ambiguities in a bill of lading should be resolved against the carrier because of the principle of contra proferentem and the principle that "bills of lading are contracts of adhesion ambiguities in which must be resolved against the carrier") (citations omitted). Thus, resolving the ambiguity in favor of plaintiff, the Transcon Bills incorporate the forum selection clause contained in the Transcon Tariff and not the one contained in the CSCL Bills. Cf. BAX Global, Inc. v. Ocean World Lines, Inc., No. 07 Civ. 10457(NRB), 2009 WL 3001816, at *3-4 (S.D.N.Y. Sept. 18, 2009) (holding that OWL – an NVOCC – could not take advantage of a forum selection clause contained in a bill of lading between it and a slot-charterer in a suit between OWL and another NVOCC, BAX Global). Therefore, I will deny Transcon's "cross motion" for judgment on the pleadings.

CONCLUSION

For the reasons stated above, defendant CSCL's motion for judgment on the pleadings in its favor (Docket No. 13) is GRANTED on the condition that CSCL waives any statute of limitations or equivalent defense in an action to be filed by plaintiff in Hong Kong on the matter asserted in the complaint, and Defendant Transcon's "cross motion" for judgment on the pleadings (Docket No. 17) is DENIED.

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
       October 20, 2009